**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**HARRISON COUNTY SCHOOL DISTRICT**          **PLAINTIFF**

**v.**          **CIVIL ACTION NO.**    1:26cv126 TBM-RPM

**JENNIFER DUHE, individually and as parent and
next friend of O.D., a minor,**          **DEFENDANT**

---

**COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION
(INDIVIDUALS WITH DISABILITIES EDUCATION ACT, 20 U.S.C. § 1415(i)(2))**

---

Plaintiff Harrison County School District ("HCSD" or the "District"), by and through undersigned counsel, files this Complaint for Judicial Review of Administrative Decision under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and states as follows:

## I. INTRODUCTION

1. This is a civil action for judicial review of a final administrative due process hearing decision and order issued through the Mississippi Department of Education ("MDE") Office of Special Education under the IDEA.

2. The District is aggrieved by portions of the Final Decision and Order issued on January 27, 2026, in MDE Case No. D08152025-2 (the "Final Administrative Decision") and seeks appropriate relief under 20 U.S.C. § 1415(i)(2), including reversal and vacatur of the challenged findings and directives. *See* Final Decision and Order, attached as Exhibit A.

3. The Final Administrative Decision found no procedural violations but concluded that the District denied the Student a free appropriate public education ("FAPE") based primarily on the District's

handling of the Student's wearing a AngelSense GPS tracking device provided by the parent on campus and related conclusions regarding individualization, collaboration, and predetermination.

4. The Final Administrative Decision denied certain requested remedies, including policy revision and district-funded private placement, but ordered affirmative relief requiring the District, among other things, to immediately allow the Student to return to school wearing the AngelSense device and to revise the Student's Individualized Education Program (IEP) within ten school days to allow the Student to wear the device.

5. This Complaint also seeks declaratory relief regarding the IDEA's "pendency" (or "stayput") provisions during this civil action, as the Final Administrative Decision imposes mandatory, prospective directives requiring immediate implementation despite significant legal error and despite the fact that the Student has not attended HCSD since August 2024 and has been unilaterally placed by the Parent.

6. This action is brought as of April 24, 2026, and is timely under 20 U.S.C. § 1415(i)(2)(B).

## II. PARTIES

7. Plaintiff Harrison County School District is a local educational agency organized under Mississippi law and a political subdivision of Mississippi with its principal offices located at 11072 Highway 49, Gulfport, MS 39503, in Harrison County, Mississippi.

8. Defendant Jennifer Duhe ("Parent" or "Defendant") is an adult resident of Harrison County, Mississippi, within the Southern District of Mississippi, and is the parent of O.D. (the "Student"), a minor. Upon information and belief, Defendant resides at 11261 Feller Drive, Biloxi, MS 39532

9. Consistent with Federal Rule of Civil Procedure 5.2(a) and to protect the Student's privacy, the District identifies the Student by initials in this public pleading.

## III. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 20 U.S.C. § 1415(i)(2)(A) and 28 U.S.C. § 1331.

11. The Court has authority to grant relief under 20 U.S.C. § 1415(i)(2)(C), including to receive the records of the administrative proceedings, hear additional evidence at the request of a party[1], and grant such relief as the Court determines is appropriate based on the preponderance of the evidence.

12. This Court has authority to issue declaratory relief under 28 U.S.C. §§ 2201-2202 regarding the parties' rights and obligations during the pendency of this civil action, including the proper identification and application of the IDEA's pendency/stay put provisions.

13. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events at issue occurred in this District and the educational program and placement at issue were offered and administered within this District.

## IV. EXHAUSTION, FINALITY, AND TIMELINESS

14. Defendant initiated the underlying administrative proceeding by filing a due process complaint with MDE on August 15, 2025, which was assigned MDE Case No. D08152025-2 (the "Administrative Proceeding").

15. An impartial due process hearing was conducted before an MDE-appointed hearing officer over multiple hearing days, including October 21-22, 2025, December 8, 2025, and December 11, 2025.

---

[1] The District requests that the Court require any party seeking to present "additional evidence" to do so only by motion for leave supported by a specific offer of proof, and that leave be granted only upon a showing that the proposed evidence is narrowly tailored, noncumulative, and could not reasonably have been presented in the administrative hearing; absent such a showing, the District requests that the Court decide this action on the administrative record and the parties' merits briefing, without discovery or an evidentiary hearing that would effectively relitigate the due process case.

16. The hearing officer issued the Final Administrative Decision on January 27, 2026.

17. On February 11, 2026, the hearing officer issued a Final Statement of Hearing Officer Closing File, identifying the administrative record and advising MDE that the hearing officer's file was closed. *See* Final Statement of Hearing Officer Closing File, attached as Exhibit B.

18. The District files this civil action within ninety (90) days of January 27, 2026, and therefore timely seeks judicial review under 20 U.S.C. § 1415(i)(2)(B).

### V. OVERVIEW OF THE GOVERNING IDEA STANDARDS

19. The IDEA requires that an eligible child receive a FAPE implemented through an IEP developed by an IEP Team and reviewed/revised through the IEP Team process. See 20 U.S.C. § 1414(d); 34 C.F.R. §§ 300.320, 300.324.

20. Under *Endrew F. ex rel. Joseph F. v. Douglas County School District RE-1*, an IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017). The Court explained that this "reasonably calculated" requirement reflects that "crafting an appropriate program of education requires a prospective judgment by school officials," and that review asks whether the IEP is "reasonable," not whether it is "ideal." *Id.* at 399-400. The Court further cautioned that judicial review must not invite courts to "substitute their own notions of sound educational policy for those of the school authorities," *Id.* at 404. The Court also emphasized that "deference is based on the application of expertise and the exercise of judgment by school authorities." Endrew F., 580 U.S. at 404 (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 208-209 (1982)).

21. In the Fifth Circuit, courts evaluate substantive IDEA compliance under the *Michael F.* framework, which considers whether the program was individualized, administered in the least

4

restrictive environment ("LRE"), provided in a coordinated and collaborative manner, and produced positive academic and non-academic benefits. *See Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. ex rel. Barry F.,* 118 F.3d 245, 253 (5th Cir. 1997); *H.W. by & through Jennie W. v. Comal Indep. Sch. Dist.,* 32 F.4th 454, 464-65 (5th Cir. 2022).

22. The IDEA requires the IEP Team to consider whether the child needs assistive technology devices and services. 20 U.S.C. § 1414(d)(3)(B)(v); 34 C.F.R. § 300.324(a)(2)(v). Public agencies must make assistive technology devices/services available if required as part of special education, related services, or supplementary aids and services. 34 C.F.R. § 300.105.

23. The right to meaningful parental participation does not equate to a right to dictate the outcome, and allegations of predetermination are evaluated under Fifth Circuit standards that distinguish lawful preparation and professional judgment from unlawful foreclosing of discussion or decision-making. *See White ex rel. White v. Ascension Par. Sch. Bd.,* 343 F.3d 373, 380 (5th Cir. 2003); *Renee J. as Next Friend of C.J. v. Hous. Indep. Sch. Dist.,* 913 F.3d 523, 530 (5th Cir. 2019) *(quoting White,* 343 F.3d at 380); *E.R. v. Spring Branch Indep. Sch. Dist.,* 909 F.3d 754, 769 (5th Cir. 2018) *(per curiam); Renee J.,* 913 F.3d at 530 *(quoting* and *applying E.R.,* 909 F.3d at 769). Consistent with these principles, courts have rejected parental demands for wearable audio-recording devices where the administrative record established no demonstrable educational benefit and a risk of interference with instruction, underscoring that IDEA does not compel such devices absent educational necessity as determined through the IEP process. In *Pollack v. Regional School Unit 75*, the hearing officer found there was "no demonstrable benefit" to the requested recording device and that it would be "disruptive and detrimental" and would "interfere with the learning process," and the First Circuit affirmed the dispositive effect of those findings, which reinforced

that FAPE does not require audio-capable devices lacking proven educational benefit in the school setting. *Pollack v. Regional School Unit 75*, 886 F.3d 75 (1st Cir. 2018).

## VI. FACTUAL AND PROCEDURAL BACKGROUND

24. The Student is a child eligible for special education and related services under the IDEA. The Student's primary eligibility classification is autism spectrum disorder.

25. Prior to the dispute underlying the Administrative Proceeding, the Student's IEPs included present levels statements reflecting, based on parent report, that the Student wore an AngelSense tracking device "at all times."The District denies that AngelSense was adopted by the IEP Team as a required accommodation, supplementary aid, service, or assistive technology device necessary to provide FAPE.

26. In anticipation of the Student's transition to kindergarten, the District convened multiple IEP meetings during 2024, including meetings on or about April 26, 2024, May 20, 2024, and July 29, 2024.

27. During this period, with Parent participation, the District conducted assessments and planning directed to the Student's needs, and developed, among other supports, a Behavior Intervention Plan (BIP) and developed and updated a campus elopement plan that addressed supervision, transition supports and campus response steps responsive to parent-reported safety concerns.

28. The District's IEP planning for the Student included specific, individualized accommodations and supports intended to be implemented on campus, including increased supervision in identified contexts and collaboration among staff as documented in the IEP materials and related plans.

29. The Student was scheduled to begin attending a District elementary school in August 2024. On or about August 2, 2024, a building administrator informed the Parent that the Student could not attend school while wearing the AngelSense device as configured.

30. The Parent did not return the Student to the District campus after that date.

31. An IEP meeting was held on or about August 16, 2024. At that meeting, the IEP team changed wording in the PLAAFP from referencing "AngelSense" to referencing a "GPS" tracking device, and the IEP team changed the Student's placement/least restrictive environment to homebound services in light of the Student's nonattendance and the Parent's continued refusal to send the Student to school absent acceptance of the specific device.

32. On or about December 6, 2024, the IEP team, including the Parent, met again and changed the Student's placement/least restrictive environment back to a general education setting at the District school, reflecting the District's educational judgment that the Student should attend school and receive services in that setting with supports and safeguards.

33. Following the meeting, the Parent did not return the Student to the District campus and subsequently enrolled the Student in a private school program.

34. In the Administrative Proceeding, the Parent alleged, among other things, that the District failed to develop and implement an IEP reasonably calculated to provide FAPE and that the District's refusal to allow AngelSense and refusal to include AngelSense in the IEP denied access to education and denied FAPE.

35. The hearing officer issued the Final Administrative Decision, including findings that the District committed no procedural violations and findings and conclusions that nonetheless determined a denial of FAPE based substantially on the AngelSense dispute and the hearing officer's conclusions regarding individualization, least restrictive environment, and collaboration.

36. The hearing officer's Final Administrative Decision denied certain relief sought by the Parent, including an order requiring the District to revise its policies concerning tracking devices and an order requiring district-funded private placement.

37. The hearing officer's Final Administrative Decision nonetheless ordered affirmative relief, including the following directives set forth in Paragraph 37(a)-(c) of the Final Administrative Decision: (a) that the District "immediately" allow the Student to return to school wearing the AngelSense device; (b) that the District revise the Student's IEP within ten (10) school days of the date of the Final Administrative Decision to allow the Student to wear the AngelSense device; and (c) that upon the Student's return to school the District follow the IEP as written.

38. The District is aggrieved by the Final Administrative Decision to the extent it includes a FAPE denial determination and imposes the above directives and associated relief. Specifically, The District seeks review of the Final Administrative Decision to the extent it (a) concludes a denial of FAPE, (b) construes and applies District Policy JEB erroneously, (c) treats a brand-specific device as educationally required notwithstanding the IEP Team process and the record evidence of layered, safety supports and policy compliant alternatives, and (d) imposes mandatory, prospective directives that exceed the hearing officer's authority and/or are not appropriate equitable relief under the IDEA.

39. The District further alleges that the Student's unilateral private placement and current enrollment status bear on the existence, scope, and appropriateness of prospective relief in this civil action, and that the hearing officer's remedial assumptions regarding the Student's return to the District were not supported by the record as developed.

### VII. HCSD POLICY JEB (TRACKING DEVICES)

40. District Policy JEB ("Student Tracking Safety Devices") was adopted by the District's Board of Trustees on November 14, 2022, and last reviewed June 16, 2025, with no revisions since its adoption. Policy JEB was authenticated in the Administrative Proceeding as Hearing Officer Exhibit HO-1 via affidavit of the District's Policy Manager/custodian.

41. Policy JEB provides, among other things, that "only student-safety tracking devices without the capability to transmit and/or record audio and video will be allowed on school campus, on District provided transportation, and at school events."

42. Policy JEB also prohibits unauthorized audio or visual recordings or transmission of audio or images of other students.

43. Policy JEB requires parent/guardian approval from the building principal before operating a tracking device on school property. The approval must be in the form of an approved user agreement that documents need, provides product information to verify device capabilities, and acknowledges parent responsibility for maintenance and cost.

44. Policy JEB reserves to the District the right to deny requests that do not meet policy requirements, to require written proof of compliance within a reasonable time after written request, and to rescind approval for violations.

45. In the Final Administrative Decision, the hearing officer construed Policy JEB in a manner that effectively treated the phrase "transmit and/or record audio and video" as prohibiting devices only if they have both audio and video capability and further treated the policy as effectively compelling allowance of AngelSense. The District contends that this construction is erroneous and that the Final Administrative Decision's FAPE analysis and relief were materially influenced by that legal error.

## VIII. NATURE OF THE DISPUTE IN CONTEXT

46. The dispute presented in this matter is not whether the Student has disability-related safety needs or whether the District must plan for safety. The District has consistently recognized the Student's needs and engaged in safety planning through the IEP/BIP/elopement planning processes.

47. The dispute is whether the IDEA compelled the District to allow a brand-specific wearable device selected solely by the parent with optional listening/communication functionality in the school setting, notwithstanding a Board policy designed to prevent unauthorized audio/video transmission or recording, where the IEP Team implemented layered, staff-driven safety measures and where the administrative record reflects no documented in-school elopement incidents in HCSD settings during ESY or during the Student's brief kindergarten attendance, and where the Parent identified only one school setting running incident at a prior program and could not identify a school setting incident in which AngelSense was necessary to prevent harm or respond to elopement.

48. The District contends that the Final Administrative Decision misapplied *Endrew F., Rowley*, and the *Michael F.* factors by treating a brand-specific device issue as dispositive of FAPE rather than evaluating the overall IEP and the District's prospective, layered safety plan and supports.

49. The District also contends that the Final Administrative Decision improperly elevated a family law custody provision requiring the Parent to ensure the Student wears AngelSense "at all times" into an IDEA entitlement against the District, notwithstanding that the IDEA question is whether the District's educational program and school supports were reasonably calculated to enable appropriate progress in light of the Student's circumstances.

50. The District further contends that the Final Administrative Decision imposed prospective orders that effectively require IEP content and immediate implementation directives outside the lawful IEP Team process required by 20 U.S.C. § 1414(d) and 34 C.F.R. § 300.324, and outside the proper scope of "appropriate" relief under 20 U.S.C. § 1415(i)(2)(C)(iii), particularly given the Student's nonattendance and unilateral private enrollment.

## IX. COUNT I

(JUDICIAL REVIEW OF ADMINISTRATIVE DECISION UNDER
THE IDEA, 20 U.S.C. § 1415(I)(2))

51. The District re-alleges and incorporates by reference Paragraphs 1 through 50 as if fully set forth herein.

52. The District brings this civil action as an aggrieved party pursuant to 20 U.S.C. § 1415(i)(2)(A) to obtain judicial review of the Final Administrative Decision issued in MDE Case No. D08152025-2.

53. The hearing officer's conclusion that the District denied the Student a free appropriate public education ("FAPE") is erroneous as a matter of law and is not supported by the administrative record when reviewed under the preponderance of the evidence standard governing an IDEA civil action. See 20 U.S.C. § 1415(i)(2)(C)(iii); *Endrew F.,* 580 U.S. at 399; *Rowley,* 458 U.S. at 206-07.

54. The hearing officer misapplied the IDEA's substantive FAPE standard by treating the Parent's preferred, brand-specific device (AngelSense) as effectively dispositive rather than evaluating the Student's educational program prospectively as a whole and deferring to reasonable educational judgment reflected in the IEP Team's planning and the District's layered school-based supports.

55. The hearing officer erred in concluding that the District failed to individualize the Student's program based on the AngelSense dispute, including by treating a brand reference in the Present Levels of Academic Achievement and Functional Performance (PLAAFP) as creating a substantive entitlement to that specific device as a required element of FAPE, despite the record that the reference was parent-reported context with no supporting data and not an IEP Team adopted accommodation, service, or assistive technology requirement.

56. The hearing officer erred in concluding, explicitly or effectively, that the District predetermined the outcome or denied the Parent meaningful participation by acting outside the IEP process. The

11

record reflects multiple IEP meetings and documented planning, and Fifth Circuit precedent confirms that meaningful participation does not confer a right to dictate outcomes and that lawful preparation, brand-neutral drafting, and consideration of policy compliant alternatives do not establish predetermination. *See Renee J.*, 913 F.3d at 530; *White,* 343 F.3d at 380.

57. The hearing officer erred in analyzing least restrictive environment ("LRE") and the temporary homebound placement by attributing the Student's nonattendance and resulting temporary homebound services to the District, rather than to the Parent's decision not to send the Student to school in connection with the AngelSense dispute and then using that attribution to support a finding that the District denied the Student a FAPE.

58. The hearing officer erred in construing and applying District Policy JEB (Student Tracking Safety Devices), including by misconstruing the policy's "transmit and/or record audio and video" restrictions and related approval/verification provisions in a manner that improperly drove the IDEA analysis and the relief ordered.

59. The hearing officer further erred by assigning controlling or dispositive weight within the IDEA FAPE analysis to a referenced state chancery custody provision concerning the Parent's obligation to have the Student wear AngelSense "at all times," rather than focusing on whether the District's school-based educational program and supports were reasonably calculated to enable appropriate progress in light of the Student's circumstances, consistent with *Endrew F.* and *Rowley*, and consistent with the IEP Team's statutory role.

60. The prospective, mandatory directives in Paragraph 37(a)-(c) of the Final Administrative Decision are not authorized by law and/or are not appropriate equitable relief under the IDEA because they compel immediate prospective action and specific IEP content outside the proper IEP

12

Team process and assume an ongoing return-to-school posture not established by the record given the Student's nonattendance and unilateral private enrollment.

61. Pursuant to 20 U.S.C. § 1415(i)(2)(C)(i), the District requests that the Court receive and review the records of the administrative proceedings.

62. Pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii), the District requests that any party seeking to submit "additional evidence" do so only by motion for leave supported by a specific offer of proof and that the Court deny leave where the proffer is cumulative, could reasonably have been presented in the Administrative Proceeding, or would effectively convert this record-review action into an unrestricted trial de novo and relitigation of the due process case.

63. Pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii), the District requests that the Court grant such relief as the Court determines is appropriate, including reversal and vacatur of the challenged findings and directives in the Final Administrative Decision.

## X. COUNT II

DECLARATORY RELIEF REGARDING PENDENCY/STAY PUT DURING THIS ACTION
(20 U.S.C. § 1415(j); 34 C.F.R. § 300.518; 28 U.S.C. §§ 2201-2202)

64. The District incorporates by reference Paragraphs 1 through 63 as if fully set forth herein.

65. An actual, justiciable controversy exists regarding the proper identification and application of the IDEA's pendency/stay-put provisions during this civil action, including whether, and to what extent, the Final Administrative Decision's directives and conclusions alter the Student's "then current educational placement" for purposes of 20 U.S.C. §1415(j) and 34 C.F.R. § 300.518, including the effect (if any) of 34 C.F.R. § 300.518(d).

66. The District seeks a declaration clarifying that, during the pendency of this civil action, the Student's "then current educational placement" for purposes of 20 U.S.C. § 1415(j) and 34 C.F.R. § 300.518 remains the last placement/program agreed upon through the IEP Team process prior to

13

the hearing officer's challenged directives, and that Paragraph 37(a)-(c) of the Final Administrative Decision does not automatically supersede pendency absent lawful agreement of the parties or a lawful change of placement determination under the IDEA's pendency framework. Alternatively, to the extent the Court determines that 34 C.F.R. § 300.518(d) applies to any aspect of the hearing officer' ruling, the District seeks a declaration identifying precisely what constitutes the pendency placement and clarifying that pendency does not expand the hearing officer's directives beyond their terms.

67. The District further seeks a declaration that, to the extent Defendant demands immediate implementation of Paragraph 37(a)-(c) of the Final Administrative Decision during this civil action, such demand is inconsistent with 20 U.S.C. § 1415(j) and 34 C.F.R. § 300.518 as applied to the facts and record of this matter, or, alternatively, that any pendency obligation is limited to the placement identified under the Court's declaration and does not authorize broader mandatory relief outside the pendency framework.

## XI. COUNT III

MOOTNESS / LIMITS ON PROSPECTIVE RELIEF; VACATUR (ARTICLE III CASE-OR-CONTROVERSY; IDEA CONTEXT)

68. The District incorporates by reference Paragraphs 1 through 67 as if fully set forth herein.

69. The Student has not attended the District since August 2024. The Parent unilaterally withheld the Student from the District and subsequently enrolled the Student in private school.

70. The District alleges that, on the record developed below, there was no established, concrete intent by the Parent to re-enroll the Student in the District, and the Final Administrative Decision's prospective, mandatory directives effectively presuppose re-enrollment and prospective District obligations in circumstances where the Student is not attending and the Parent has chosen unilateral private enrollment.

14

71. Because the student's IEP remains in effect and the hearing officer's order presently imposes obligations on the District, this petition presents a live case or controversy; nevertheless, mootness is a threshold Article III issue the Court may consider sua sponte, and, if the IEP later expires or is superseded during review, IDEA disputes of this kind are often treated under the 'capable of repetition, yet evading review' doctrine. *See Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1040-41 (5th Cir. 1989). Separately, when a parent refuses to avail the student of the offered public program, whether through unilateral private placement or by a near unequivocal rejection of public placement, any asserted failure to convene or generate additional IEPs does not, without more, establish a denial of FAPE absent the specific prejudice required by 20 U.S.C. § 1415(f)(3)(E)(ii) to the child's right to a FAPE, to parental participation, or to educational benefits. *See E.R.*, 909 F.3d at 771-72.

72. The District therefore seeks vacatur or modification of the Final Administrative Decision to the extent it imposes prospective directives untethered to a live controversy regarding the Student's current enrollment or unsupported by the specific prejudice required by 20 U.S.C. § 1415(f)(3)(E)(ii), particularly given the Parent's refusal to access the offered public program.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Harrison County School District respectfully requests that the Court enter judgment in its favor and grant the following relief:

A. Reverse and set aside the Final Administrative Decision to the extent it determined that the District denied the Student a FAPE.

B. Vacate the portions of the Final Administrative Decision ordering the District to (i) immediately allow the Student to return to school wearing the AngelSense device, (ii) revise the Student's IEP

within ten school days to allow the Student to wear the AngelSense device, and (iii) comply with associated mandatory directives tied to those orders.

C. Declare that the District complied with the IDEA and did not deny the Student a FAPE during the time period(s) at issue in the due process complaint, to the extent supported by the administrative record and the Court's findings.

D. Enter declaratory relief clarifying the parties' rights and obligations during the pendency of this civil action under 20 U.S.C. § 1415(j) and 34 C.F.R. § 300.518, including as to whether the Final Administrative Decision's directives may be enforced during this action.

E. Alternatively, remand for further administrative proceedings consistent with the Court's order, if and to the extent remand is deemed appropriate.

F. Award the District its recoverable costs as allowed by law.

G. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 24th day of April, 2026.

**HARRISON COUNTY SCHOOL DISTRICT**

By: /s/ KaShonda L. Day
One of its Attorneys

OF COUNSEL:

KaShonda L. Day, Esq. (MS Bar No. 103144)
ADAMS AND REESE LLP
1018 Highland Colony Parkway, Suite 800
Ridgeland, MS 39157
Telephone:    601-292-0785
Facsimile:     601-355-9708
kashonda.day@arlaw.com

Wynn E. Clark, Esq. (MS Bar No. 6279)
WYNN E. CLARK, ATTORNEY AT LAW
14397 Creosote Road
Gulfport, MS 39503

Telephone:      228-575-9996
Facsimile:      228-575-9030
wynn@wynnclark.com

17